DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MICHAEL MANNA,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-2656

[August 13, 2025]

Appeal from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Lauren Burke, Judge; L.T. Case Nos. 2023MM006586AXXXMB and 2024MM007730AXXXMB.

Jason T. Forman of Law Offices of Jason T. Forman, P.A., Fort Lauderdale, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Rachael Kaiman, Senior Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Michael Manna ("Defendant") appeals his sentence after he entered open guilty pleas to violating a restraining order and violating probation tied to Defendant's domestic battery misdemeanor conviction. During his sentencing hearing, the domestic battery victim, Defendant's wife ("Victim"), testified at great length and detail to Defendant's past uncharged conduct. Defendant argues his sentencing hearing was so tainted by Victim's lengthy, prejudicial testimony that his right to due process was deprived, resulting in a fundamentally erroneous sentence. As detailed below, we disagree with Defendant and affirm.[1]

**Background**

---

[1] To the extent Defendant argues the trial court was not permitted to consider a statement which he had made while on probation, we affirm that issue without discussion.

In 2024, Defendant pleaded guilty to domestic battery. The trial court withheld adjudication for battery and sentenced Defendant to twelve months of probation with the condition that he not contact Victim. Later that year, Defendant pled guilty to violation of probation and violation of injunction after he sent Victim text messages on five separate occasions, multiple text messages through a co-parenting communication app, and a letter. The trial court accepted Defendant's open pleas.

At the sentencing hearing, Victim gave a lengthy statement. She testified that during their marriage, Defendant had abused her, their children, and their pets; committed marital rape; and damaged her home and belongings. These incidents were not included in the charged crime.

Victim also gave charged crime testimony relevant to this case:

> In May of 2023, [Defendant] -- which I think this is what caused [Defendant's] arrest -- he pinned me to the bed, his hands and his arms on my chest as well as covering my mouth. I was trying to scream for my son to call 911 while [Defendant] was holding me down and covering my mouth.

The trial court sentenced Defendant to nine months in jail with credit for twenty-five days served for the violation of the domestic battery probation, and twelve months of probation with conditions to begin after his release for violating the injunction. This sentencing appeal follows.

**Analysis**

> [T]rial judges are routinely made aware of information which may not be properly considered in determining a cause. Our judicial system is dependent upon the ability of trial judges to disregard improper information and to adhere to the requirements of the law in deciding a case or in imposing a sentence.

*Harvard v. State*, 414 So. 2d 1032, 1034 (Fla. 1982).

The Florida Constitution and Statutes permit crime victims to make a statement before the sentencing court pursuant to "Marsy's Law." *City of Tallahassee v. Fla. Police Benevolent Ass'n*, 375 So. 3d 178, 181 (Fla. 2023). Marsy's Law pertinently states, "every victim is entitled to . . . [t]he right to be heard in any public proceeding involving pretrial or other release from any form of legal constraint, plea, sentencing, adjudication, or parole, and any proceeding during which a right of the victim is

implicated." Art. I, § 16(b)(6)b., Fla. Const. "At the sentencing hearing, and prior to the imposition of sentence . . . the sentencing court shall permit the victim of the crime for which the defendant is being sentenced . . . to: [a]ppear before the sentencing court for the purpose of making a statement under oath for the record[.]" § 921.143(1)(a), Fla. Stat. (2023).

"Marsy's Law does not provide procedures and guidelines as to how its purpose is to be achieved." *L.T. v. State*, 296 So. 3d 490, 499 (Fla. 1st DCA 2020). However, "[t]hese provisions call for a careful balance of the rights of the defendant and those of the victim . . . without impacting the basic constitutional foundations of the criminal justice system." *Id.* at 495.

On appeal, Defendant contends the trial court failed to maintain that "careful balance" when it permitted Victim to testify to alleged actions of Defendant that were not at issue, thus tainting his sentencing. Defendant concedes this issue is not preserved and, thus, is raised as a claim of fundamental error.

In determining whether a sentencing error is fundamental, "the inquiry must focus on the nature of the error, its qualitative effect on the sentencing process and its quantitative effect on the sentence." *Bailes v. State*, 382 So. 3d 1, 4 (Fla. 4th DCA 2024) (quoting *Maddox v. State*, 760 So. 2d 89, 99 (Fla. 2000)). "In most cases, a fundamental sentencing error will be one that affects the determination of the length of the sentence such that the interests of justice will not be served if the error remains uncorrected." *Id.* (quoting *Maddox*, 760 So. 2d at 100).

We review a claim of fundamental error de novo. *Nabeack v. State*, 364 So. 3d 1116, 1117 (Fla. 4th DCA 2023). We also review de novo as to whether a trial court relied on impermissible factors when sentencing in violation of a defendant's due process rights. *Randolph v. State*, 355 So. 3d 442, 448 (Fla. 4th DCA 2023).

"Generally, 'when a sentence is within statutory limits, it is not subject to review by an appellate court.'" *Landis v. State*, 404 So. 3d 405, 411 (Fla. 4th DCA 2024) (quoting *Charles v. State*, 204 So. 3d 63, 66 (Fla. 4th DCA 2016)). Here, Defendant faced a maximum two-year sentence after pleading guilty to two first-degree misdemeanors. *See* §§ 784.03(1), 741.31(4)(a), Fla. Stat. (2023). The trial court sentenced Defendant within the statutory limits when it sentenced him to nine months in jail, followed by twelve months on probation.

3

The "'consideration of subsequent charges with which the defendant has not been convicted violates due process' and, therefore, creates a fundamental error in the sentencing process." *Hillary v. State*, 232 So. 3d 3, 4–5 (Fla. 4th DCA 2017) (quoting *Fernandez v. State*, 212 So. 3d 494, 496 (Fla. 2d DCA 2017)); *Norvil v. State*, 191 So. 3d 406, 410 (Fla. 2016). "However, the mere fact that a sentencing judge hears improper information related to uncharged conduct during a sentencing hearing does not necessarily warrant reversal." *Wyrich v. State*, 370 So. 3d 1000, 1004 (Fla. 2d DCA 2023); *Serrano v. State*, 279 So. 3d 296, 302 (Fla. 1st DCA 2019) ("[T]here must be some indication that the court based its sentence on an impermissible factor before this Court will reverse.").

Ultimately, "the State bears the burden to show that the sentencing judge did not rely upon the uncharged conduct." *Wyrich*, 370 So. 3d at 1004; *Randolph*, 355 So. 3d at 450 ("Ordinarily, when the trial court allegedly relies on improper sentencing considerations, the State must demonstrate that the trial court's sentencing decision was not so influenced." (citation omitted)).

Here, the State satisfied its burden to prove that the trial court did not improperly rely on the uncharged crime testimony. The trial court stated immediately after Victim's statement that it would consider such statements as they pertain to the charged domestic battery and not weigh "the prior bad acts that are alleged" for sentencing purposes. The trial court also declared that it would only review Victim's testimony, as it concerned uncharged conduct, for the impact of Defendant's contact as it affected Victim's "frame of mind." Finally, the trial court sentenced Defendant well within the statutory limits.

## Conclusion

A trial court is left in a particularly challenging spot when it must balance the rights of the defendant with those of the victim. While the law requires the court to permit victims to testify at their aggressors' sentencing hearings, if they so wish, it also commands the sentencing court not to consider uncharged conduct. The sentencing judge here carefully threaded that needle, especially considering the absence of an objection. Although Victim testified to Defendant's uncharged conduct, the trial court properly explained that it would not consider nor rely on that testimony of uncharged conduct. Under these circumstances, Victim's statement did not fundamentally taint Defendant's sentence, nor constitute a violation of due process.

*Affirmed.*

4

WARNER and GERBER, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***