# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

JEFFERY GESKE,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D22-729

_____

January 12, 2024

BY ORDER OF THE COURT.

### ON MOTION FOR WRITTEN OPINION

Appellant's motion for written opinion is granted.  The opinion issued September 1, 2023, is withdrawn, and the attached opinion is substituted in its place.


I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT
ORDER.



MARY ELIZABETH KUENZEL, CLERK

# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

JEFFERY GESKE,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D22-729

_____

January 12, 2024

Appeal from the Circuit Court for Sarasota County; Donna Padar, Judge.

Andrea Flynn Mogensen of Law Office of Andrea Flynn Mogensen, P.A., Sarasota, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Elba Caridad Martin, Assistant Attorney General, Tampa, for Appellee.

MORRIS, Judge.

Jeffery Geske appeals his sentences imposed for forty counts of possession of child pornography (ten or more images), following the denial of his motion for a downward departure.[1]  We affirm for the reasons stated herein.

_____

[1] Geske was also convicted and sentenced for one count of possession of a controlled substance.  However, his argument on appeal

Geske pleaded no contest to the charges and was adjudicated guilty. Prior to sentencing, he filed a motion for a downward departure. In the motion, he relied on section 921.0026(2)(d), Florida Statutes (2021), to argue that he required specialized treatment for a mental disorder that was unrelated to substance abuse or addiction.[2] He also relied on section 921.0026(2)(j) to argue that the offense was committed in an unsophisticated manner and that it was an isolated incident for which he had shown remorse. After a hearing, the trial court denied Geske's motion and sentenced him to 180 months in prison for counts one to thirty and to 174.3 months in prison for counts thirty-one to forty, with some counts running concurrently and others running consecutively.

On appeal, Geske argues that fundamental error occurred as a result of several trial court errors. The State disputes this court's jurisdiction over this appeal. The State also contends that Geske failed to preserve his arguments for appeal.

JURISDICTION AND PRESERVATION

The State first asserts that we lack jurisdiction to hear this appeal because it involves a denial of a motion for downward departure. We reject this argument for the reasons expressed in *Barnhill v. State*, 140 So. 3d 1055, 1060 (Fla. 2d DCA 2014).[3]

---

addresses the denial of his motion for downward departure which focused on his sentences for the child pornography offenses. Thus we confine our opinion to the issue of the sentences imposed for those offenses.

[2] Geske makes no argument related to this statutory ground for departure and thus we do not address it further.

[3] The State points out that the First District Court of Appeal, in *Wilson v. State*, 306 So. 3d 1267, 1272-73 (Fla. 1st DCA 2020), *review* granted, SC20-1870, 2021 WL 1157838 (Fla. Mar. 26, 2021), certified

We also reject the State's argument that Geske was required to preserve his arguments at the sentencing hearing or in a motion brought pursuant to Florida Rule of Criminal Procedure 3.800(b).  Geske's arguments on appeal address the issues of failure to properly apply the two-part test for a downward departure, application of a general policy of not granting a downward departure, and reliance on improper sentencing factors.  Those types of purported errors constitute due process violations resulting in fundamental error.  *See, e.g.*, *Gage v. State*, 147 So. 3d 1020, 1022 (Fla. 2d DCA 2014) (involving consideration of impermissible sentencing factors); *Price v. State*, 278 So. 3d 697, 701 (Fla. 4th DCA 2019) (same); *Little v. State*, 152 So. 3d 770, 771-72 (Fla. 5th DCA 2014) (concluding that applying general policy on motion for downward departure results in fundamental error).  Because such errors are errors in the sentencing process, rather than errors in the sentences themselves, a rule 3.800(b) motion is not required to preserve the issues; in fact, rule 3.800(b) is an improper mechanism for preserving those issues for appeal.  *See Hannum v. State*, 13 So. 3d 132, 135 (Fla. 2d DCA 2009) (explaining that trial court's error in consideration of improper factors during sentencing was an error in the sentencing process rather than an error in the sentencing order and thus rule 3.800(b) was not applicable); *Josephs v. State*, 86 So. 3d 1270, 1272 (Fla. 4th DCA 2012) (explaining that a defendant cannot use a rule 3.800(b) motion to raise the issue of a trial court's reliance on improper factors during sentencing).  Further, because each of those types of errors would constitute a due process violation resulting in fundamental error, Geske

conflict with this court on this issue and that the proceeding in the Florida Supreme Court remains pending.  However, we note that the State did not ask this court to certify conflict with *Wilson.*

3

was not required to preserve his arguments below. *See Cromartie v. State*, 70 So. 3d 559, 563 (Fla. 2011) ("[W]here there is no contemporaneous objection during a sentencing hearing and where the error does not qualify as a 'sentencing error' that can be raised in a rule 3.800(b) motion, the error can still be considered and remedied on appeal if the error is fundamental." (citing *Jackson v. State*, 983 So. 2d 562, 574 (Fla. 2008))). Thus we must proceed to address the merits of Geske's arguments.

## ANALYSIS

I.     *The trial court made it clear that it was exercising its discretion not to impose a downward departure sentence, and any error in applying an incorrect burden of proof was harmless.*

Geske first argues that the trial court failed to properly apply the two-part test that is required when a trial court considers a motion for a downward departure.

> A trial court's decision whether to depart from the guidelines is a two-part process. First, the court must determine whether it *can* depart, i.e., whether there is a valid legal ground and adequate factual support for that ground in the case pending before it (step 1). Legal grounds are set forth in case law and statute, and facts supporting the ground must be proved at trial by "a preponderance of the evidence." This aspect of the court's decision to depart is a mixed question of law and fact and will be sustained on review if the court applied the right rule of law and if competent substantial evidence supports its ruling.

> Second, where the step 1 requirements are met, the trial court further must determine whether it *should* depart, i.e., whether departure is indeed the best sentencing option for the defendant in the pending case. In making this determination (step 2), the court must weigh the totality of the circumstances in the case, including aggravating and mitigating factors. This second aspect of the

4

> decision to depart is a judgment call within the
> sound discretion of the court and will be sustained
> on review absent an abuse of discretion.

*Barnhill*, 140 So. 3d at 1060 (quoting *Banks v. State*, 732 So. 2d 1065, 1067 (Fla. 1999)).  Typically, a trial court's discretionary decision whether to grant a downward departure is reviewed for abuse of discretion, but where the issue involves a trial court's application of an incorrect standard in determining whether to exercise its discretion, a de novo standard of review applies.  *Id.* at 1060-61.

A "defendant bears the burden of presenting competent, substantial evidence to support the reason for a downward departure." *State v. Lackey*, 248 So. 3d 1222, 1224 (Fla. 2d DCA 2018).  "The level of proof necessary to establish facts that support a departure from the lowest permissible sentence is a preponderance of the evidence." § 921.002(1)(f), Fla. Stat. (2021).

Geske contends that the trial court never completed step one, i.e., it did not make a clear determination about whether it *could* or *could not* depart.  And he asserts that a trial court cannot proceed to step two without first determining that a valid basis for departure has been proven.  This court and others have reversed where a trial court's statements are unclear as to whether it was rejecting a defendant's factual basis or whether the defendant had established a factual basis but the trial court was exercising its discretion not to depart.  *See, e.g.*, *Williams v. State*, 286 So. 3d 892, 895, 898 (Fla. 2d DCA 2019) (reversing and remanding where there was uncertainty about whether trial court incorrectly determined it could not depart or whether it determined that it could depart but then exercised its discretion not to depart); *Camacho v. State*, 164 So. 3d 45, 48 (Fla. 2d DCA 2015) (vacating sentence in part because record was unclear whether trial court's ruling was based on

5

rejection of some of the defendant's expert's opinions or whether the trial court made a legal error by concluding that no legal basis for a departure existed where trial court never stated that defendant failed to meet his evidentiary burden nor expressly indicated it was rejecting any portion of the expert's testimony); *Kovalsky v. State*, 220 So. 3d 1192, 1195-96 (Fla. 4th DCA 2017) (reversing and remanding for resentencing where it was unclear whether the trial court determined that it *should not* depart (step two) "as opposed to determining that it was 'confined' by the step one determination and thus downward departure was not an option").

Geske contends that in this case, the trial court expressed doubt about whether a valid basis had been proven and yet still ruled that a departure sentence was not appropriate in this case. Geske argues that this proves that the trial court did not properly apply the two-part test.

Our reading of the transcript reflects that the trial court made several findings relating to Geske's evidence. In evaluating the statutory ground of the offense being isolated and unsophisticated and where the defendant has shown remorse, the trial court opined that it was "difficult to find that burden was met by the facts available to the defense." After addressing several aspects of Geske's expert witness's testimony, the trial court ultimately concluded that "I'm not going to find it appropriate, even if the - - every factor was met. . . . I do not find it appropriate to grant you a downward departure under the facts of this case." The State then interjected that "there has to be a firm pronouncement that you could depart, but you're not." The trial court responded, "ok." The trial court then stated that it would make its ruling clear and stated the following:

> I question whether or not the burden has been met for both the proposed downward departure[s] cited by the Defense. I do believe the State's arguments against the downward departure [were] persuasive, and the Court adopts

6

them. Even if a threshold was met beyond a reasonable doubt, or by clear and convincing evidence, or you know, beyond any reasonable doubt whatsoever, the Court does not find it appropriate under the circumstances to grant a downward departure in this case.

While this statement is not an explicit determination by the trial court that it *could* depart, it is clear when reading the trial court's statements as a whole that the trial court was not going to depart. That is, the trial court had determined that even if Geske had established a valid legal basis to depart and supported it with factual evidence, the trial court did not believe it *should* depart, step two in the two-part test. This is not a situation where the record is unclear whether the trial court would have imposed the same sentence if it had understood that it had the authority to depart. *Cf. Camacho,* 164 So. 3d at 48. Rather, it is very clear that despite the trial court's doubts about whether Geske had met his evidentiary burden (step one), the trial court was not going to exercise its discretion to impose a departure sentence (step two).

Geske next points to the trial court's reference to the threshold for proving a ground for a downward departure by a reasonable doubt or by clear and convincing evidence. Geske argues that that reference proves that the trial court held him to a higher burden of proof than the preponderance of the evidence standard set forth in section 921.002(1)(f). We agree that it appears that the trial court applied an incorrect burden of proof. However, we also conclude that this error does not rise to the level of fundamental error. This is due to the trial court's explanation that regardless of whether Geske met his burden of proof, the trial court was not going to exercise its discretion to depart under step two of the two-part test. Thus any error in applying step one of the two-part test or in improperly conflating steps one and two was harmless. *See Rodriguez v. State,* 299 So. 3d 555, 557 (Fla. 5th DCA 2020) (holding that even if

7

the trial court erred in concluding that a second ground for a downward departure was not established or even if it had erroneously conflated steps one and two, any error was harmless based on the trial court's conclusion that even if the first ground for a downward departure was established, the trial court was not going to depart).

We conclude that any error in applying an incorrect burden of proof for step one was harmless due to the trial court's clear ruling that regardless of the evidence that Geske had provided, the trial court was not going to depart (step two). Accordingly, Geske is not entitled to a resentencing based on a misapplication of the two-part test.

II.    *The trial court did not fundamentally err by considering whether Geske showed remorse or accepted responsibility and whether Geske had been truthful during his evaluation with his mental health expert.*

Geske next argues that the major theme at his sentencing was whether he showed remorse. He points to various comments made by the State and the trial court, and he argues that the trial court improperly considered Geske's alleged belief that those who viewed child pornography did not cause harm to the victims, his failure to acknowledge that he was a pedophile (even though he was not diagnosed as such), his failure to attempt to "right the wrongs," and his failure to obtain treatment while in jail. Geske also argues that the trial court committed a due process violation by considering Geske's truthfulness as reflected by the trial court's comment that Geske was "not completely forthright" when he was evaluated by his expert witness.

We find no merit to these arguments. Section 921.0026(2)(j) specifically permits a trial court to grant a downward departure where the crime was an isolated incident and unsophisticated and where the defendant <u>has shown remorse</u>. All three elements of that statutory

8

ground must be established in order to be entitled to a downward departure on that basis. *State v. Guerra*, 328 So. 3d 1002, 1005 (Fla. 4th DCA 2021). Case law also provides that "consideration of remorse is appropriate if it occurs during a court's consideration of whether to mitigate a sentence." *Bellamy v. State*, 199 So. 3d 480, 483 (Fla. 4th DCA 2016); *see also Green v. State*, 84 So. 3d 1169, 1171 n.3 (Fla. 3d DCA 2012) (noting that courts can consider whether a defendant has shown remorse or accepted responsibility where the defendant seeks a reduction, mitigation, or downward departure of his sentence); *Johnson v. State*, 948 So. 2d 1014, 1017 n.2 (Fla. 3d DCA 2007) (noting that section 921.0026(2)(j) permits consideration of lack of remorse).

This is not a case where the trial court equated Geske's exercise of his constitutional rights with a lack of remorse. *Cf. Bici v. State*, 292 So. 3d 1248, 1250 (Fla. 5th DCA 2020). Nor is there any evidence that the trial court denied the motion for downward departure because Geske entered a no contest plea instead of a guilty plea. Rather, it is evident that in determining whether Geske was entitled to a downward departure under section 921.0026(2)(j), the trial court properly considered whether Geske had shown remorse or accepted responsibility, a necessary requirement for that statutory ground.

Turning to the issue of whether the trial court erroneously considered Geske's truthfulness, we conclude that the record does not support that argument. The comment was made during the trial court's explanation for why it did not give much weight to Geske's expert's testimony: because the expert himself did not believe Geske had been completely forthright during his evaluation. Thus the trial court's comment reflected the trial court's weighing of the evidence and the credibility of the witness. The trial court did not fundamentally err in

9

considering whether Geske had shown remorse or accepted responsibility for purposes of determining whether he was entitled to a downward departure pursuant to section 921.0026(2)(j). Nor did the trial court erroneously consider Geske's truthfulness before denying his motion. Consequently, no resentencing is required on this basis.

III. *The trial court did not consider inadmissible and unproven facts developed during plea negotiations, and thus no fundamental error occurred.*

Geske argues that the trial court improperly considered inadmissible and unproven facts that were developed during plea negotiations. In support of this argument, he cites section 90.410, Florida Statutes (2019), for the proposition that any statements made in connection with a plea are inadmissible. And he specifically points to a statement made by the State about Geske's purported motive for entering a plea.

However, we find no indication in the transcript that the trial court considered what occurred during plea negotiations as a factor when fashioning Geske's sentence. To the contrary, the transcript reflects that the trial court specifically stated that regardless of the trial judge's personal feelings "and how the State charges things, and how negotiations go, and what defense attorneys recommend to their clients while awaiting sentencing, I can't take any of that into account at this point." Absent evidence to suggest that the trial court considered statements made in connection with the entry of Geske's plea, there is no fundamental error. Thus Geske's argument on this point is without merit.

IV. *There is no indication that the trial court considered uncharged and unsubstantiated alleged crimes and bad acts in denying Geske's motion and rendering his sentences, but even if it had, no fundamental error occurred.*

10

Geske next contends that the trial court improperly considered other uncharged acts of possession of child pornography. He contends that the State presented evidence of 189 images of child pornography (including those that formed the basis for the forty counts that Geske pleaded to plus an additional 149 images) and that the State informed the trial court that at one point, there had been 219 potential counts of possession of child pornography. He argues that this led to the trial court's improper consideration of the additional 149 images for which he was never charged and for which no proof was presented. He also cites testimony from a State witness that there were more child pornography images located on a computer that was never found. He asserts that while the State, over a defense objection, asked the trial court to consider computer search terms not connected to the possession of any child pornography, there were no dates developed to establish when those searches were conducted nor was there any proof that it was Geske who conducted them.

The State, in an attempt to establish that the trial court did not improperly consider the evidence related to the additional 149 images when ruling on Geske's motion prior to sentencing, argues that sections 775.0847(2) and 827.071(5)(a), Florida Statutes (2019), permit the State to charge a defendant with one count of possession of child pornography for the defendant's possession of multiple images rather than just one image and, as a result, that each count is reclassified as a higher offense. The State contends that the trial court was permitted to consider the evidence of the other 149 images here because each of the 40 counts involved multiple images.

Notably, in his response, Geske agrees that each of the forty counts could be reclassified pursuant to section 775.0847(2). But he disagrees

11

that the charging document reflects that each of the forty counts involved more than one image. Instead, he maintains that he was only charged with possession of forty single images. Thus he argues that the State's evidence relating to the other 149 images was uncharged collateral crime evidence which the trial court should not have considered when ruling on his motion and fashioning his sentence.

Both Geske and the State appear to interpret the meaning of the reclassification provision in section 775.0847(2) differently, resulting in a dispute over how many images formed the basis for each of the forty counts. But we need not resolve the statutory interpretation issue because we conclude that it is not apparent that the trial court considered the additional images or search terms, and even if it did, there was no fundamental error because the evidence and arguments were presented for the purpose of establishing why Geske was not entitled to a downward departure pursuant to section 921.0026(2)(j).

In fashioning a sentence, a trial court may not consider incidents of misconduct that occur after the charged offense or unsubstantiated allegations of misconduct; nor may a trial court rely on speculation that the defendant may commit crimes in the future. *See, e.g., Wyrich v. State*, 370 So. 3d 1000 (Fla. 2d DCA 2023) (involving uncharged misconduct); *Tharp v. State*, 273 So. 3d 269, 271 (Fla. 2d DCA 2019) (involving misconduct that occurred after the charged offenses); *Lundquist v. State*, 254 So. 3d 1159, 1160 (Fla. 2d DCA 2018) (same); *Berben v. State*, 268 So. 3d 235, 238 (Fla. 5th DCA 2019) (involving uncharged crimes); *Shelko v. State*, 268 So. 3d 1003, 1005 (Fla. 5th DCA 2019) (involving unsubstantiated allegations of misconduct).[4] Where a

---

[4] Geske relies heavily on both *Berben* and *Baldino v. State*, 225 So. 3d 257, 262 (Fla. 4th DCA 2017), arguing that the State improperly

trial court does so, a due process violation occurs that results in fundamental error.  *See Wyrich*, 370 So. 3d at 1004; *Tharp*, 273 So. 3d at 271; *Lundquist*, 254 So. 3d at 1160.  It is the State which bears the burden to prove that from the record as a whole, the trial court did not consider impermissible factors during sentencing.  *See Wyrich*, 370 So. 3d at 1004; *Lundquist*, 254 So. 3d at 1160.

Notably, this court and at least one other Florida appellate court have recognized that where a trial court hears information related to uncharged misconduct during a sentencing hearing, a reversal is not automatically required; this is because trial courts are expected to "act within the bounds of the law and neither consider nor act upon that improper information."  *Wyrich*, 370 So. 3d at 1004; *see also Barlow v. State*, 238 So. 3d 416, 417 (Fla. 1st DCA 2018) (citing *Harvard v. State*, 414 So. 2d 1032, 1034 (Fla. 1982), for the proposition that trial courts are regularly presented with information that may not be properly considered while also noting that the judicial system relies upon the ability of trial courts to disregard such information and to abide by the requirements of the law when sentencing a defendant).  And here, there is no indication that the trial court violated that principle.

First, we note that when the State's witness referenced the 189 total images, defense counsel made no objection.  Second, the State did not continue to focus on the additional images; instead, the State proceeded to ask the witness whether there was an indication that Geske

_____

encouraged the trial court to consider the additional uncharged images. However, neither of those cases involved a motion for downward departure pursuant to section 921.0026(2)(j) based on the argument that the crimes were isolated and unsophisticated and that the defendant showed remorse.  *Cf. Berben*, 268 So. 3d at 237-38; *Baldino*, 225 So. 3d at 262-63.  Thus neither case controls the outcome in this case.

13

had created the images or videos himself and what attempts had been made to modify or delete the images. That line of questioning also addressed whether the deletions that were made were simple or sophisticated types of operations. The witness opined that it was clear that based on the time frame of the attempted and completed deletions, "it wasn't an isolated incident" but was instead "an ongoing, somewhat sophisticated endeavor."

On cross-examination, defense counsel asked questions about whether the witness could tell whether the images found had been viewed and by whom and whether the witness could tell when things had been deleted from the computers.

On redirect, the State asked the witness about whether files containing child pornography referenced Geske's name and what the internet search history indicated. It was then that defense counsel objected, but notably the objection was that the testimony about the search terms was irrelevant, not that it was improper uncharged crimes evidence. Over objection, the witness was permitted to answer about the search terms which were used.

In its closing argument, the State noted to the trial court that the *quantity* of contraband—here the 189 images—was not an appropriate factor for the trial court to consider. The State's primary argument was that the crime was not unsophisticated because there was evidence that Geske took great efforts to delete images, using certain computer applications more than once a day to try and do so and because he downloaded a movie creation application to create his own video from the images. The State also argued that the crimes were not isolated or unsophisticated because they took place over an extended period of time. The reference to the 219 original counts arose during the State's

14

argument that Geske only pleaded no contest so that the number of counts would be reduced, rather than his accepting responsibility.

During defense counsel's closing argument, he asserted that the crimes were unsophisticated because uploading images "is not a sophisticated endeavor." Defense counsel argued that the crimes were isolated in nature because following the upload of the images, there was nothing proving that Geske had been continuously viewing them. Defense counsel also argued that the State was incorrect that Geske's plea was only entered in order to reduce the number of counts he faced; defense counsel contended that Geske accepted responsibility by entering a plea to the forty counts because "[t]here was no question [that] [h]e possessed the child pornography." Notably, defense counsel himself mentioned the 189 total images more than once during closing argument but never contended that the trial court should not consider all of them because Geske was only charged with forty counts. Defense counsel also never argued that the State's witness's testimony about the additional 149 images or the search terms used was unsubstantiated.

The trial court provided a lengthy oral explanation for its ruling denying Geske's motion prior to imposing the sentences. When addressing whether the crimes were isolated and unsophisticated and whether Geske had shown remorse, the trial court stated that it found "it difficult to find that the burden has been met by the facts available to the Defense." The court noted that this case did not involve a single event followed by Geske's "attempts to make it right ever since through remorse." The trial court noted that it "probably couldn't put together a video like the one [Geske] put together" and that it [the trial court] could not have figured out how to run all the computer applications that Geske used to try and delete the images. The trial court also stated it could not

15

have figured out that the hard drives should be taken out and put in a safe.  The trial court concluded its explanation by stating it was "not going to find it appropriate, even if . . . every factor was met . . . to grant [the] downward departure under the facts of this case."

As the court did in *Barlow*, we conclude that "there is no indication that the trial court based its sentence" on additional uncharged images. 238 So. 3d at 417.  It is clear that the primary focus of the State's evidence and its argument to the trial court centered on Geske's efforts to alter images and to delete them.  It is likewise clear that the trial court focused on those same issues.

Yet, even if the trial court had based its denial of Geske's motion and Geske's sentences on the additional 149 images, it would not have been fundamental error.  The testimony elicited by the State and the State's arguments were presented to establish that the crimes were not isolated or unsophisticated and that Geske had failed to take responsibility for the crimes.  That testimony and argument was directly relevant to whether Geske was entitled to a downward departure pursuant to section 921.0026(2)(j).  Similarly, the State's witness's testimony about Geske using search terms was not improper.  Like the evidence and argument relating to the additional 149 images of child pornography, the testimony about the search terms was being used to rebut Geske's contention that his crimes were isolated and unsophisticated.  Accordingly, Geske has failed to establish that a due process violation occurred, and he is not entitled to resentencing based on this argument.

> V.    *The trial court did not consider crimes committed by others nor did it apply a blanket policy of denying requests for a downward departure in child pornography cases or in cases*

16

*where a defendant fails to show remorse, and therefore, it did not fundamentally err.*

On this issue, Geske contends that the trial court improperly considered victim impact statements from some of the children (and their parents) who were the subject of some of the images that Geske possessed. He argues that the statements do not relate to him personally because the statements address the initial sexual abuse and the persons who committed such crimes as well as the production of the materials. He notes that he was only charged with possession of child pornography, not the creation of it. Thus he argues that by considering the statements, the trial court improperly held him responsible for the sexual abuse of the children, the production or distribution of the materials, or the conduct of future viewers.

Geske also argues that the trial court's comments here are similar to those made in *Berben, Barnhill,* and *Goldstein v. State,* 154 So. 3d 469, 473-75 (Fla. 2d DCA 2015). He argues that it is clear that the trial court was applying a blanket policy of not permitting a downward departure in child pornography cases as a whole or where a defendant has failed to show remorse. He argues that the trial court's application of such policies constitutes a due process violation resulting in fundamental error.

We first note that because child pornography images are frequently in circulation in many locations, unsworn victim impact statements are routinely used in child pornography cases. *See, e.g., Dickie v. State,* 216 So. 3d 35, 36 (Fla. 2d DCA 2017) (involving the State's introduction of unsworn victim impact statements collected through the FBI's child victim ID program which are used across different proceedings because of the way child pornography traffickers organize their pornography and because the same images remain in circulation on the internet long after

17

they are created).  Such statements are a permissible type of information for trial courts to consider when fashioning a defendant's sentence.  *See id.* at 37-38.  This is because trial courts have wide discretion in sentencing and may consider all information that "reasonably might bear on the proper sentence for a particular defendant, given the crime committed."  *Id.* at 37 (quoting *Howard v. State*, 820 So. 2d 337, 340 (Fla. 4th DCA 2002)).  Consequently, the trial court did not fundamentally err by reading and considering the victim impact statements when sentencing Geske.

We disagree with Geske's contention that the trial court's comments in this case are equivalent to those made in *Berben*, *Barnhill*, and *Goldstein*.[5]  Nowhere within the transcript does the trial court equate

_____

[5] In each of these cases, the trial courts made comments reflecting that the defendants were not being sentenced based on the specific facts of their own cases, but based on the type of case for which they were being sentenced.  *See, e.g.*, *Goldstein*, 154 So. 3d at 472-73 (concluding that trial court improperly considered evidence from other cases and lumped defendant with all other similarly charged defendants where trial court talked about prior child pornography cases and common traits among defendants, about how the trial court knew from its experience in sitting on child pornography cases that similarly situated defendants were sexually aroused by children, about not having enough data to accurately predict whether child pornographers would go on to touch a child, and about the trial court's refusal to take the risk that Goldstein or others with a proclivity for child pornography would actually sexually abuse a child in the future); *Barnhill*, 140 So. 3d at 1059 (concluding that trial court improperly considered evidence from other hearings and lumped defendant with all other similarly charged defendants where trial court talked about epidemic of child pornography cases, about percentage of child pornographers who have hands-on contact with children, about pedophiles generally, and about there being "no magic answer as to whether [Barnhill was] going to reoffend"); *Berben*, 268 So. 3d at 237 (concluding that trial court relied on impermissible sentencing factors in part where trial court stated that there was "little difference in culpability between those who actually sexually abuse and exploit

18

Geske's possession of child pornography with the actual production or distribution of it, nor does the trial court indicate that its sentencing was based on whether other people currently possess or could in the future possess the images. Likewise, we do not construe the trial court's comments to mean that the trial court lumped Geske in with all other similarly charged defendants. It is clear from our reading of the transcript that the trial court carefully considered the specific facts of Geske's case, evidenced by the trial court's references to the evidence presented in this case. The fact that the trial court read the victim impact statements and noted the continuing nature of the crimes (because child pornography images remain in circulation) does not suggest otherwise. *See Barlow*, 238 So. 3d at 417-18 (rejecting appellant's argument that trial court committed fundamental error by noting the general societal harm that is caused by child pornography where the trial court did not articulate any general policy applicable to all child pornography cases).

In addressing the remorse aspect of Geske's motion, the trial court explained that it analyzes whether a defendant "wishes" for a lower sentence when entering a plea or whether a defendant has "a plan to make what you have done wrong in society right to better yourself and to better the people that you've harmed." The trial court then addressed the facts of Geske's case, noting various parts of Geske's own testimony as well as the testimony of Geske's expert witness. The court explained why it found Geske's expert's testimony to be inconsistent (in part because Geske had not been forthright in his evaluation) as well as based on a test that was not peer-reviewed and which was no longer

children and those who encourage and promote conduct by downloading and sharing videos of such").

19

used by the expert. The trial court explained that it was concerned because Geske's expert agreed that Geske did not seem to think he had done anything wrong. Ultimately, the trial court concluded that this case did not involve a "single event" where Geske had been making attempts to make it right because he was remorseful. These statements do not reflect that the trial court applied a blanket policy of refusing to grant a downward departure where a defendant fails to show remorse. Rather, they reflect that the trial court considered the evidence presented to reach the conclusion that Geske himself had not shown remorse, a necessary factor for a downward departure pursuant to section 921.0026(2)(j).

CONCLUSION

We hold that Geske failed to establish that fundamental error occurred in the trial court's denial of his motion for downward departure and the imposition of his sentences. Accordingly, we affirm.

CASANUEVA and ROTHSTEIN-YOUAKIM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

20